### A. Cunningham v. E. Frandtzen, and Others.

It is well settled, that a party in possession of land with improvements and enclosure holds to the extent of his enclosure by what is termed *actual* possession; and if at the same time he holds under deed or title, he holds to the extent of the boundaries of his deed or title, outside of his actual possession, by what is termed *constructive* possession.

If such a party sell a part of his tract, including the improvements which constituted his actual possession, by a deed to a purchaser with defined limits less than the whole tract, and the purchaser take possession under the deed, his possession, either actual or constructive, extends no further than the limits defined in his deed, and he, the purchaser, is not in possession of the whole tract of his vendor.

The constructive possession being dependent upon the actual, the vendor in such case, having parted with that which gave him actual possession of part of the tract, loses the constructive possession of the remainder, and retains no possession of such remainder, unless he took actual possession of it at the time of the conveyance.

A party pleading the statute of limitations assumes the burden of proof, and if it is not shown that he comes within the provisions of the statute, he cannot defend under it.

A defence of the statute of limitations must be specially pleaded; and therefore a defendant who relies upon the title of his vendor by his three years possession under color of title, disconnected from the defendant's own possession, must plead it in that form so as to give notice of it.

Whether three years possession of lands, under color of title, is available as a title after the lapse of that period, notwithstanding such possession is afterwards lost, or is not continuously kept up, has not been authoritatively decided in this State.

In fixing the different periods of limitation in our statute, the Legislature regulated the force and effect to be given to adverse possession of land, by the degree of merits in the title under which it was held and claimed—requiring the longer possession in proportion to the weakness of the title.

The effect of the statutes of limitation of this State, with regard to the investiture of title in the possessor of real estate, claiming under them, considered; but the question not being involved in the issue, a definite opinion withheld.

APPEAL from Gillespie.    Tried below before the Hon. Thomas J. Devine.

This was an action of trespass to try title brought by Andrew Cunningham against Erasmus Frandtzen and the other defendants,

on the 21st of October, 1853, for the recovery of two-thirds of a league and one labor of land, lying in Gillespie county, and known as Survey No. 19, in Sec. No. 1.

The plaintiff claimed the land as devisee of Hugh M. Cunningham, deceased, whose title was also derived by devise under the last will and testament of John R. Cunningham, deceased, to whom a patent for the land in controversy issued from the State on the 27th day of July, 1852.

The defendants in their answer, and amended answers, set up title in themselves by conveyances from John C. Hays and Henry M. Lewis, alleging that Hays was the owner by transfer of a valid certificate, issued by the Board of Land Commissioners of Bexar county, on the 30th day of March, 1838, to Jose Antonio Leal, for one league and labor of land, which certificate was located on the land in controversy long before the date of plaintiff's patent, and the survey and field notes duly recorded in Bexar Land District on June 10th, 1847.    They further aver, in substance, that, at the time of such location, the land in controversy was public demain, subject to location; that a previous location thereon of a duplicate certificate had been raised and canceled by John C. Hays, District Surveyor of the District; that consequently the right to the land in controversy had been vested in the vendors of defendants long prior to the date of the patent under which plaintiff claims.    And they further plead the statute of limitations of three years, alleging adverse possession under title, and color of title, and suggesting valuable improvements in good faith.

The cause came to trial at the October term, 1855, when there was a verdict in favor of the plaintiffs for the land, and of the defendants for the assessed value of the improvements.    On motion of the defendants, a new trial was granted; and at the fall term, 1856, there was verdict generally for defendants, judgment accordingly, new trial refused to plaintiff, and this appeal in consequence.

It was proved by the defendants that the first occupancy was by a party of Mormons, under the lead of Lyman Wright, who took possession of part of the tract on the 7th of December, 1846, and who, within four months thereafter, recognized Hays and Lewis as the owners, and themselves as their tenants; that they built

cabins, fenced in and cultivated from one hundred and fifty to two hundred acres, remained in possession four or five years, when they sold their improvements to Joel L. Ankrim, as agent of Hays and Lewis; that Ankrim cultivated the improved portion of the tract by his tenants, and retained possession thereof until the sale of the tract to the defendants in the year 1852. The sales were made by Ankrim as agent, and by Lewis, who was interested in the lands, to the various defendants, in several parcels to each, and at various dates in 1852. The actual possession of the improved portion of the tract was shown to have been continuous and successive from the first occupancy by the Mormons, by Ankrim, as agent, and by defendants as vendees of Hays and Lewis, down to the institution of the suit. The defendant Frandtzen's purchase included, so far as the evidence showed, all of the improvements constituting the actual possession of his vendors; by which, in the view of the law taken by the opinion, his case is distinguished from those of his co-defendants.

As the opinion is based altogether on the plea of the statute of limitations, no notice is here taken of the evidence not relevant thereto.

*S. G. Newton, Rogan* and *Cowan*, for appellant. Our statute of limitations provides but one prescription by which title to land can be acquired to the extent of a man's metes and bounds, unless he traces his title to the sovereignty of the soil; and that is by five years peaceable possession, use, and occupation under deeds duly recorded, and paying taxes thereon. The facts show that the title failed in connecting itself with the sovereignty of the soil; and of this the defendants and their vendors had, or should have had full notice, had ordinary diligence been used.

The possession of a genuine certificate, with a transfer to him, is evidence that the holder is entitled to the quantity of land mentioned, out of the public domain, but is not evidence of title to any particular land, nor can it be until location made. Then there could be no prescription under the certificate until location made. Then, what constitutes a location? It consists in depositing the certificate with the Surveyor, with a designation from a

starting point, with course and distance, of some portion of the *public domain*, with a request that the land be surveyed and the field notes returned. Then, in what consists the public domain? It is all the land in the State not otherwise appropriated. And when is it appropriated? When located upon by virtue of a genuine certificate; and being so located, it is appropriated, and no other title to it can be acquired. Consequently there can be no "regular chain of transfer from, or under the sovereignty of the soil." (Hart. Dig. Art., 2391.) Then no prescription of three years could be acquired, for the chain is broken.

3d. That even had these defendants connected their title with the sovereignty of the soil, as contended by them, still, the plaintiff having the paramount title, cannot bring to their aid prescription of three years, unless they show that they or their vendors have been in actual possession with title for the time, or that the right of possession and title were coupled in the same individual, which assumes that a tenant in possession, under this statute, has the right of possession adverse to that of the landlord, (Angell on Limitations, 396, 427, 428; Adams Eject. 11, 34; 3d Greenlief's Maine Rep., 315,) which brings us to the proposition that the possession, with the right of possession, and the title to the land, must be in the same person.

*Jacob Waelder*, for appellee, insisted that the possession of Hays by his tenants and agent, in connection with that of the defendants, claiming under a valid certificate and survey, was continuous, uninterrupted, and adverse from the year 1847 to the institution of this suit in 1853, and consequently satisfied the 15th section of the statute of limitations; and that the possession extended to the whole area of the survey claimed. (Hartley's Dig., Art. 2391; Scott v. Rhea, 5 Tex., 260; Castro v. Wurzbach, 13 Tex. R., 128; Wheeler v. Moody, 9 Tex. R., 377.)

ROBERTS, J. The appellant asked the court to charge the jury that "a party claiming a tract of land, and placing a tenant in possession of the same upon improvements, afterwards sells a portion of the tract, including the improvements, to the tenant, who

remains in possession of the tract sold, ceases to be the tenant in possession of the remainder, and it is in law a voluntary abandonment of possession of the balance of the tract by the claimant; and it matters not whether that abandonment be for a day, or for years, the statute ceases to run in his favor."

This charge was refused by the court, and its refusal is assigned as error. It was pertinent to the facts in proof; and in reference to the facts it could not have misled the jury, whether or not in every state of facts it might be literally correct.

Some such charge was necessary, as that must have been the turning point in the case, and none was given.

It is well settled that a party in possession, with improvements and enclosure, holds to the extent of his enclosure by what is termed actual possession; and if at the same time he holds under deed or title, he holds to the extent of the boundaries of his deed or title, outside of his actual possession, by what is termed constructive possession. The constructive is dependent upon the actual possession, and must continue or fail with it. If such party sell a part of his tract, including the improvements, which constituted his actual possession, by a deed to a purchaser, with defined limits less than the whole tract, and the purchaser take possession under his deed, his possession, either actual or constructive, extends no further than his deed, and therefore he, the purchaser, is himself not in possession of the whole tract of his vendor. And the vendor, having parted with that which gave him actual possession of part, loses the constructive possession of the balance, he not taking actual possession of any other part at the same time. (5 Peters' U. S. Rep., 353–4, and also 447.)

This charge is predicated upon the fact, that Frandtzen was put in possession of the improvements as purchaser of a part of the tract which included them. His possession was connected with Hays, and constituted a bar under the three years limitation.

As to Burg, it is shown that he lived on the land the year previous to the sale to Frandtzen; that he never left the land, but lived in one of the Mormon houses until he built a cabin on the tract bought by him. It does not appear that this Mormon house was not on the land bought by Frandtzen, nor whether he built

his cabin and took possession of his own land before or after Frandtzen took possession. A party pleading the statute of limitations assumes the burden of proof, and if it is not shown that he comes within its provisions, he cannot defend under it. It was therefore incumbent on Burg to show further, that the Mormon house which he occupied continued to belong to Hays as long as he lived in it, holding under Hays; or that he took possession of his tract before Frandtzen bought and took possession of the tract including the improvement. Not having done either, he has failed to make out his defence under the plea of limitation.

As to the other defendants, it is shown that they went into possession after Frandtzen, and, therefore, they have failed to make out their defence under the plea of limitation.

As to Frandtzen, the judgment must be affirmed, and as to the other defendants, reversed and remanded.

The question as to whether Hay's possession for three years by his tenants and agents, under color of title, extinguishes the right of Cunningham altogether, and confers such a right on Hays as that defendants can thereby defeat this action, although the possession has not been made out continuously up to the time of bringing the suit, does not properly arise in this case.

The manner of pleading the statute of limitations shows that the defendants relied on their own possession as connected with that of Hays, and not upon that of Hays for three years disconnected from their own. The charges of the court are shaped with reference to that construction of the plea; and so the verdict of the jury embraces it in its general finding for the defendants. Therefore, although the evidence may show that Hays had possession for three years, under color of title at some time, though not immediately before suit brought; and although that should be held to extinguish Cunningham's title and confer title on Hays, still that issue not being made by the pleadings and found by the verdict, the judgment cannot be sustained for defendants on that ground. A defence of the statute of limitations is required to be specially pleaded, and, therefore, if defendants had relied upon title in Hays by his three years possession, under color of title, disconnected from their own possession, they should have pleaded

it in that form so as to have given notice of it.   (O. & W. Dig., Art. 1361.)

Whether three years possession, under color of title, is available as a title after the lapse of that period, although afterwards the possession is lost, or not kept up continuously, may be regarded as not having been authoritatively settled in this State.   In one case it seems to be taken for granted that it would confer title. (Scott v. Rhea, 5 Tex. R., 260.)   In another case it was held as to personal property that possession during the period of limitation would confer title, enabling such possessor to recover it from the original owner who had gotten possession of it, and remarks are made in the opinion from which it might be inferred that it might be different as to real property.   (Winburn's Ex. v. Cochran, 9 Tex. R., 123.)

In fixing the different periods of limitation in our statute, the Legislature regulated the force and effect to be given to adverse possession of land by the degree of merits in the title under which it was held and claimed, requiring the longer possession in proportion to the weakness of the title.   Under title, or color of title, three years only was required, while under recorded deed, payment of taxes, cultivation, &c., five years was required, and without title or deed, ten years was required.   In the sections prescribing the five and ten years, it is expressly provided for conferring title on the possessor, but not so in the section prescribing three years.   In that, however, it is provided that "the right of the government shall not be barred."   From this it may be inferred that it was contemplated that such possession would bar and extinguish the superior right of others, but not that of the government.   And the reason why the expression that it should confer title is omitted in this section, may be because the possession must have been under title, or color of title from or under the sovereignty of the soil.   It need not be the best title, still it must be a title.   And if it be the inferior title, three years possession under it should simply establish it as the superior title from thenceforth.   If it should be held that three years possession under color of title, does not extinguish a superior title in some one else not in possession, the incongruity would follow, that nine

years possession under title would have less force and effect than five years under a mere recorded deed, or ten years without any title at all.    More than that, a possession of a league of land might be continued for fifty years under color of title, and upon the possession being discontinued from any cause, a superior title might be asserted, which had lain dormant during all that time, and the possessor for the fifty years would hold six hundred and forty acres under the ten years limitation, without title, and lose all the balance, notwithstanding its possession under color of title for fifty years.    This would result in not giving effect to possession in proportion to the merits or demerits of the title under which it was held; which, it is thought, must have been the design of the Legislature.

On the other hand, this 15th Section of the statute so pointedly and repeatedly refers to the "person in possession," as the one entitled to make the defence of three years possession under title, or color of title, as to make it plausible that the Legislature intended for it to be available as a defence to one only who might be in possession when suit should be brought.    This certainly is its literal import.    To contravene this conclusion, an effect must be given to three years possession under title, or color of title, as a result, beyond what is expressed in the section prescribing it as a bar.    Such is the case with statutes of limitation relating to the possession of personal property, where it is held as a result of the operation of the statute, that it not only bars the remedy but extinguishes the title of the former owner, and confers title on the possessor for the period of limitation.    (9 Tex. Rep., 123; 5 Litt., 282, 437; 3 Hen. & Munf., 37, 55; 5 Cranch, 358.)

Such statutes generally relate to the remedy, and do not express that the title shall be extinguished.    Therefore it is that its extinguishment is a result of the operation of the statute not expressed in it.

Such resulting effect has also been given to statutes of limitation relating to actions for realty, although not expressed in the statute; so that both in England and America it has been generally held, that adverse possession of land during the period of limitation confers title on such possessor; and that upon such title, thus

acquired, he could recover the land from any one who might afterwards have possession adverse to him.

The only thing found militating against the proposition, is an occasional expression that the effect of the statute of limitations is to bar the remedy—not to destroy the right.

The following authorities may be referred to on the subject: 1 Blackstone's Rep., 675–8; 2 Green. Cruise, 230–7; 3 Johns. Rep., 269; 16 Johns. Rep., 314; 3 Black. Com., 196; 2 do., 264; 9 B. Monroe, 498; 4 Dana, 483; 3 Marshall, 951; Marg. p. 28; 5 Peters' U. S. R., 438; Angell on Lim., 14, 458, 460, and Appendix, xv., xxvi. & xxx.

The phraseology of this 15th section of our statute of limitations is different from that used generally in the statutes of limitation elsewhere. And the question is, whether it is so much different as to require a different effect to be given to its operation.

This is not presented in the issue, and therefore a definite opinion is not given upon it.

Judgment affirmed as to Frandtzen, and reversed and remanded as to the rest of the defendants.